McGRATH v ALLSTATE INSURANCE COMPANY

Docket No. 289210. Submitted June 15, 2010, at Lansing. Decided
November 2, 2010, at 9:00 a.m.

James P. McGrath, as personal representative of the estate of Mary
J. McGrath, deceased, brought an action in the Otsego Circuit
Court against Allstate Insurance Company and Inergy Propane,
LLC, formerly known as Gaylord Gas, seeking damages for water
damage that occurred at Mary's house in Gaylord when water
pipes ruptured because of a lack of heat in the house after the
propane tank ran out of propane. Allstate, which insured the
property, had denied coverage on the basis that Mary had failed to
comply with the requirement of the policy that she notify Allstate
of any changes in the use or occupancy of the residence premises.
Allstate noted that the home had not been used as Mary's
residence for more than two years before the water damage
occurred and that Allstate had not been notified of that fact.
Gaylord Gas, which had had an agreement with Mary to keep the
propane tank full in return for Mary's agreement to pay her bill
and keep the driveway reasonably clear of snow, had cancelled the
agreement after its delivery driver found the driveway to the
property impassable. Following case evaluation, the gas company
reached a settlement with plaintiff. The court, Janet M. Allen, J.,
denied two motions for summary disposition filed by Allstate. A
jury found in favor of plaintiff and, pursuant to stipulation,
Allstate was ordered to pay plaintiff $100,000. The court then
denied Allstate's motion for postjudgment relief. Allstate appealed.

The Court of Appeals held:

1. The trial court erred when it denied Allstate's motions for
summary disposition. The insurance policy did not cover the
damage to the house because, at the time of the loss, the house was
not a "dwelling" as defined by the policy. The policy defined
"dwelling" as a family building structure "where you reside"
(meaning the insured) and that was principally used as a private
residence. This section thus contained a statement of coverage
that required that the insured live at the premises at the time of
the loss. The policy stated that the "insured premises" means the
residence premises, and the coverage section stated that the

insured's "dwelling" was the covered property. The definition of "residence premises" used the word "dwelling." Therefore, the term "dwelling" was an integral part of the term "residence premises," which in turn was an independent part of the term "insured premises." Because the phrase "where you reside" was not merely used to describe the dwelling but was an independent part of the definition of "residence premises," the phrase was not merely an affirmative warranty that the insured lived in the dwelling when the insured originally entered into the insurance contract, but required that the insured reside at the premises at the time of the loss. Because Mary did not reside at the Gaylord property at the time of the loss, she failed to comply with the policy terms, and the trial court erred when it denied Allstate's motions for summary disposition.

2. The trial court erred by ascribing a technical meaning to the undefined term "reside," when the common understanding of the term required that Mary live at the Gaylord address at the time of the loss. While ambiguities in an insurance contract must be construed against the insurer, which has a superior understanding of the terms it employs, in order to bind relatively unsophisticated insureds, insureds should not be allowed to employ a sophisticated version of a term to create an ambiguity. It was undisputed that Mary did not satisfy the unambiguous requirement that she "reside" in the house when the loss occurred.

3. The court should have granted summary disposition in favor of Allstate in light of Mary's failure to provide adequate notice of the change in occupancy of the Gaylord property. The policy placed on the policyholder the responsibility to inform the insurer of a change in occupancy. That Mary's daughter notified Allstate that Mary's billing address had changed was insufficient as a matter of law to put Allstate on notice that Mary no longer lived full-time at the Gaylord property and did not obligate Allstate to inquire further about the occupancy of the home. The judgment on the jury verdict must be vacated

Reversed and judgment vacated.

1. INSURANCE — PROPERTY INSURANCE — WORDS AND PHRASES — DWELLING — RESIDE.

    Language in an insurance policy providing that to be a "dwelling" covered by the policy, the building must be identified in the policy declarations, the insured must reside there, and the building must be used as a private residence indicates that the insured must reside at the property not only at the time the policy becomes

effective, but also at the time of a loss sought to be covered under the policy; the term "reside" requires that the insured actually live at the property.

2. INSURANCE — PROPERTY INSURANCE — NOTICE OF CHANGE OF BILLING ADDRESS — NOTICE OF CHANGE OF OCCUPANCY OF INSURED PREMISES.

An insured's act of notifying its real property insurer that the insured's billing address has changed is insufficient as a matter of law to put the insurer on notice that the insured no longer lived full-time at the property or to obligate the insurer to inquire further about the occupancy of the property.

*Fabian, Sklar & King, P.C.* (by *Patrick A. King*), for James P. McGrath.

*Garan Lucow Miller, P.C.* (by *Megan K. Cavanagh* and *Michael J. Swogger*), for Allstate Insurance Company.

Before: MURRAY, P.J., and SAAD and M. J. KELLY, JJ.

SAAD, J. Defendant Allstate Insurance Company appeals an order of judgment and an order that denied its motion for postjudgment relief. Allstate also appeals two orders that denied its motions for summary disposition. For the reasons set forth below, we reverse the trial court's denials of Allstate's motions for summary disposition and vacate the judgment on the jury verdict.

I. FACTS

In July 1992, the decedent, Mary McGrath, bought a home in Gaylord, Michigan, and insured it with Allstate. Until 1998, Ms. McGrath lived in the Gaylord home for most of the year and spent winters in Florida. On November 5, 1992, Ms. McGrath executed a "keep full" agreement with defendant Inergy Propane, LLC, formerly known as Gaylord Gas (hereinafter "Gaylord Gas"), to ensure that there was sufficient propane to

heat the house during the winter. Under the agreement, Gaylord Gas would send a delivery driver to the house on a regular basis to check the amount of propane remaining in the tank and add propane if needed. The agreement with Gaylord Gas required Ms. McGrath to pay her bill and ensure that the driveway remained reasonably clear of snow.

In 1998, Ms. McGrath developed dementia and Alzheimer's disease and, as her condition deteriorated, Ms. McGrath's daughter Cathy moved into the Gaylord house with Ms. McGrath to help take care of her. By 2003, Cathy was unable to care for her mother alone, and Cathy and her siblings decided that Ms. McGrath and Cathy should move to and live in an apartment in Farmington Hills, where Ms. McGrath would be closer to family and her doctors. Cathy changed Ms. McGrath's billing address and notified Allstate that the insurance bills should be sent to their address in Farmington Hills. After Ms. McGrath moved to Farmington Hills, the Gaylord house was no longer used as a full-time residence, though Ms. McGrath left the majority of her belongings there and family members visited the house on occasion for weekends or holiday vacations. Ms. McGrath also visited the Gaylord property for a few days in October 2005. The record reflects that Cathy spent a night at the Gaylord house around Thanksgiving 2005, but no one else visited the property during the winter of 2005-2006. In late May of 2006, Brian McGrath, Ms. McGrath's son, discovered that his mother's property had suffered extensive water damage. Plaintiff, James McGrath, Ms. McGrath's son, reported the loss to Allstate, and Allstate paid for the initial cleanup and investigated the cause of the damage.

Allstate concluded that the water damage was caused by a frozen pipe that had ruptured because of a lack of heat in the house. Sometime between November 2005

and May 2006, the propane tank at the Gaylord property ran out of fuel, which rendered the furnace inoperable. The record reflects that Gaylord Gas canceled the "keep full" agreement with Ms. McGrath on December 19, 2005, after its delivery driver found the driveway impassable. It is undisputed that the driveway of the Gaylord property was not plowed during the winter of 2005-2006. On June 15, 2006, Allstate informed plaintiff over the telephone that it would not pay for the water damage, and Allstate sent a formal denial-of-coverage letter on June 22, 2006.

Plaintiff filed a complaint against Allstate for breach of contract, and he also asserted a claim of negligence against Gaylord Gas. Plaintiff settled the claim against Gaylord Gas after case evaluation. Allstate filed two motions for summary disposition pursuant to MCR 2.116(C)(10), and the trial court denied both motions. A jury found in favor of plaintiff and, pursuant to stipulation, Allstate was ordered to pay plaintiff $100,000. The trial court denied Allstate's motion for postjudgment relief on November 13, 2008.

## II. ANALYSIS

We hold that the trial court erred when it denied Allstate's motions for summary disposition.[1]

---

[1] We review the denial of a motion for summary disposition de novo. *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 291; 778 NW2d 275 (2009). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the case. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The moving party is entitled to a grant of summary disposition if the party demonstrates that no genuine issue of material fact exists. *Coblentz v City of Novi*, 475 Mich 558, 569; 719 NW2d 73 (2006). "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2007). A plaintiff must support its claim with pleadings, affidavits, depositions, admissions, and any

The rules of contract interpretation apply to the interpretation of insurance contracts. *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 82; 730 NW2d 682 (2007). The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). When the policy language is clear, a court must enforce the specific language of the contract. *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 160; 534 NW2d 502 (1995). However, if an ambiguity exists, it should be construed against the insurer. *Id*. An insurance contract is ambiguous if its provisions are subject to more than one meaning. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009), citing *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982). An insurance contract is not ambiguous merely because a term is not defined in the contract. *Vushaj*, 284 Mich App at 515. Any terms not defined in the contract should be given their plain and ordinary meaning, *id*., which may be determined by consulting dictionaries, *Citizens Ins Co*, 477 Mich at 84.

In its motions for summary disposition, Allstate argued that the policy does not cover the damage to the Gaylord property because Ms. McGrath failed to comply with the policy terms. Specifically, Allstate asserted that, contrary to the requirements of the policy, Ms. McGrath did not reside at the Gaylord property at the time of the loss and failed to notify Allstate of the change in title, occupancy, or use of the property. In essence, Allstate claimed that because the nature of the

other admissible evidence. *Coblentz*, 475 Mich at 569. Mere speculation and conjecture cannot give rise to a genuine issue of material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 371-372; 547 NW2d 314 (1996).

risk insured is greater for an unoccupied home, All-state's policy required that Ms. McGrath reside in the home and notify Allstate if this changed. Allstate asserted that Ms. McGrath did not meet these obligations of the policy.

We agree with Allstate that the insurance policy does not cover the damage to the Gaylord house because, at the time of the loss, it was not a "dwelling" as defined by the policy. The policy states that Allstate will "cover sudden and accidental direct physical loss" of covered property, which includes "[y]**our dwelling** including attached structures." As defined in the policy, " **'You'** or **'your'**–means the person named on the Policy Declarations as the insured and that person's resident spouse." "Dwelling" is defined as "a one, two, three or four family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence." The policy further states that the insured "must pay the premium when due and comply with the policy terms and conditions, and inform [Allstate] of any change in title, use or occupancy of the **residence premises**." "Residence premises" is defined as "the **dwelling**, other structures and land located at the address stated on the Policy Declarations."

The critical inquiry here is whether the phrase "where you reside" in the definition of the covered "dwelling" precludes coverage because of Ms. McGrath's extended absence from the insured property. Plaintiff contends that the phrase "where you reside" is merely descriptive of the property and that it constitutes only an affirmative warranty that Ms. McGrath lived in the house when she originally entered into the insurance contract with Allstate. Allstate maintains that the phrase "where you

reside" is a statement of coverage that requires that the insured live at the premises at the time of the loss.

We agree with Allstate. *Random House Webster's College Dictionary* (2000) defines the verb "reside" in part as "to dwell permanently or for a considerable time; live." Accord *The American Heritage Dictionary of the English Language* (3d ed, 1996) ("To live in a place permanently or for an extended period."). The policy states that the "insured premises" means "the residence premises" and the coverage section states that the insured's "dwelling" is the covered property. (Boldface omitted.) The definition of "residence premises" uses the word "dwelling," which is specifically defined as a building structure "*where you reside* and which is principally used as a private residence." (Emphasis added and boldface omitted.) Thus, the term "dwelling" is an integral part of the term "residence premises," which in turn is an independent part of the term "insured premises." In *Heniser*, 449 Mich at 167, our Supreme Court ruled that, because the phrase "where you reside" was "not used to describe the dwelling but is an independent part of the definition of 'residence premises,' " the phrase is not merely an affirmative warranty, but requires that the insured reside at the premises at the time of the loss.

This differs from the policy in *Reid v Hardware Mut Ins Co of the Carolinas, Inc*, 252 SC 339, 342; 166 SE2d 317 (1969), which was contrasted by the *Heniser* Court and which described the property itself as a "one story frame constructed, approved roof, *owner occupied*, one family dwelling." (Emphasis added.) In *Reid*, the court ruled that the phrase describing the property as "owner occupied" "is a description merely and is not an agreement that the insured should continue in the occupation of it." *Id.* at 346. The *Heniser* Court further

observed that the "owner occupied" language in *Reid* "was in a list of statements describing the building covered by the policy," making it "clear that 'owner occupied' was simply a description of the dwelling in the same way that stating the building had an 'approved roof' merely commented on the structure at the time the policy was created." *Heniser*, 449 Mich at 167 n 13. Again, here, "where you reside" is an independent part of the definition of "dwelling," which not only defines the covered property, but is also incorporated in the definition of "residence premises." The language is not merely descriptive of the Gaylord house, but constitutes a statement of coverage; to be a "dwelling" covered by the policy, the building must be identified in the policy declarations, the insured must reside there, and the building must be used as a private residence. This indicates that the insured must reside at the property not only at the time the policy becomes effective, but at the time of the loss.

The trial court implicitly acknowledged that Ms. McGrath had to reside at the Gaylord property when the water damage occurred, but erroneously ruled that plaintiff had established an issue of fact on this question. Specifically, the trial court ruled that because evidence showed that, despite her move to Farmington Hills in 2003, Ms. McGrath *intended* to return to the Gaylord house at some time in the future, she "resided" in the house when the pipes burst during the winter of 2005-2006. We hold that the trial court's ruling is based on a misinterpretation of *Heniser*. In *Heniser*, the plaintiff sold his property on a land contract, and the property was destroyed by a fire a few months later. *Heniser*, 449 Mich at 157. The insurer denied coverage because Mr. Heniser did not reside in the house when the fire occurred. Our Supreme Court noted that the term "reside" may be ambiguous in some contexts, but

was not ambiguous in Mr. Heniser's policy, which, again, provided that the " 'residence premises' " are " 'where you reside . . . .' " *Id.* at 158 n 1. The Court observed that, in some circumstances, such as those involving the Freedom of Information Act, MCL 15.231 *et seq.*, or the Child Custody Act, MCL 722.21 *et seq.*, the term "reside" may have a legal or technical meaning beyond mere physical presence, including "the intent to live at that location at sometime in the future, a meaning similar to the legal concept of domicile." *Heniser*, 449 Mich at 163. However, the Court declined to rule that "reside" should be given a "sophisticated" meaning in the home insurance context under the policy language at issue. *Id.* The Court ultimately concluded that Mr. Heniser could not satisfy either interpretation of "reside" because, as a result of selling the house, he did not physically live there and he clearly lacked any intent to return. We hold that any discussion by the Court in *Heniser* with regard to Mr. Heniser's failure to satisfy either the "general or popular meaning" or "technical" standard was merely obiter dictum and that the term "reside" requires that the insured actually live at the property. Again, the *Heniser* Court rejected the notion that a more technical meaning should be applied in this context in order to construe an unambiguous term in favor of insurance coverage:

> The policy of interpreting ambiguities in a contract against insurers is rooted in the fact that insurers have superior understanding of the terms they employ, which should not bind relatively unsophisticated insureds. This goal is not furthered by allowing insureds to employ a sophisticated version of a term to create a claim of ambiguity. [*Id.*]

As in *Heniser*, there is no ambiguity in the Allstate policy issued to Ms. McGrath. Accordingly, it was error for the trial court to ascribe a technical meaning to the

term "reside" when the common understanding of the term required that Ms. McGrath live at the Gaylord address at the time of the loss. It is undisputed that Ms. McGrath did not physically live at the Gaylord address when the pipes froze and burst or for two years before the loss and, therefore, she did not satisfy the requirement that she "reside" in the house when the loss occurred.[2]

The multiple risks assumed by an insurer in exchange for an insurance premium are tied to an understanding that the building structure covered is where the insured dwells either permanently or for a considerable period because the risks assumed are clearly affected by the presence of the insured in the dwelling and the associated activities stemming from this presence. Unoccupied or vacant homes, with no resident present to oversee security or maintenance, are at greater risk for break-ins, vandalism, fire, and water damage of exactly the kind that occurred in this case. We recognize that an insured may be

---

[2] We also observe that Ms. McGrath arguably did not live at the Gaylord address when the loss occurred *or* when the policy came into effect. Justice LEVIN argued in his dissent in *Heniser* that if Mr. Heniser had resided at the property when he received his homeowners insurance renewal certificate, he may have reasonably concluded that he was covered for the policy year. *Heniser*, 449 Mich at 175 (LEVIN, J., dissenting). Here, in response to Allstate's motion for summary disposition, plaintiff pointed out that Allstate issued a renewal policy *after* Ms. McGrath had moved out of the Gaylord house in 2003, and plaintiff affirmatively argued that "[t]his was a different policy period, during which a different insurance contract was in force." Were we to conclude that the phrase "where you reside" in the policy does not require that an insured will be physically present in the dwelling throughout the policy period, plaintiff's position would suggest that Ms. McGrath had to at least reside at the Gaylord property when she received the renewal certificate or on the date it became effective. However, we decline to address this issue because our holding resolves the matter and because, despite plaintiff's assertions, the parties did not attach evidence of a policy renewal to their briefs below and this issue was not argued before or decided by the trial court.

away from a property temporarily for travel or because of illness, and the policy clearly contemplates temporary absences, without curtailing coverage. As one example, the frozen-pipes exclusion limits an insured's ability to recover for a loss when a building structure is vacant or unoccupied unless the insured takes reasonable measures to prevent such damage. This exclusion implicitly recognizes that the insured may be away from the property, but be covered for the loss. This is not inconsistent with the definition of "reside" as defined above. Indeed, the fact that Ms. McGrath had established the habit of vacationing in Florida during the winters in the 1990s did not change the character of the dwelling or her living arrangements. During that time, she resided on the property, albeit for fewer than 12 months of the year, but it remained her home base and the residence to which she regularly returned. At issue here is undisputed evidence that Ms. McGrath lived full-time in an apartment in Farmington Hills for more than two years before the loss occurred. She traveled once to the property for a very brief visit during those years, and it is clear that the Farmington Hills apartment had become her fixed residence. Because Ms. McGrath did not reside at the Gaylord property, she failed to comply with the policy terms, and the trial court erred when it denied Allstate's motions for summary disposition.

We also agree with Allstate that the trial court should have granted Allstate's motions for summary disposition in light of Ms. McGrath's failure to provide adequate notice of the change in occupancy of the Gaylord property. Allstate's argument relies on the following language in the insurance policy:

> In reliance on the information **you** have given **us,** **Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium

when due and comply with the policy terms and conditions, and inform **us** of any changes in title, use or occupancy of the **residence premises**.

Allstate also relies on the following language: "No suit or action may be brought against **us** unless there has been full compliance with all policy terms."

Again, Ms. McGrath moved to Farmington Hills in November 2003, and it is undisputed that Cathy notified Allstate of the change of billing address. The question is whether Cathy's notification was sufficient to put Allstate on notice that there might have been a change in occupancy of the insured property. The parties do not dispute that it is common in the context of insurance contracts that the insured's billing address is different from the address of the property insured.

Importantly, the term "occupancy" in this policy is found in the phrase "any change in title, use or occupancy of the **residence premises**." The use of the term "title" appears to address any changes in possessory interest of the Gaylord property. Further, the policy defines "residence premises" as "the **dwelling**, other structures and land located at the address," and "dwelling" is defined as structures where the insured "reside[s]." In keeping with our holding that Ms. McGrath did not reside on the property, the home cannot be deemed her dwelling and thus was not her residence premises. Accordingly, because Ms. McGrath did not reside on the Gaylord property, she did not occupy it, which is a change requiring notification.

Plaintiff asserts that, because Ms. McGrath lived in the Gaylord home for approximately 14 years and because no evidence showed that she had ever changed her billing address before, Allstate should have questioned why Cathy changed the billing address. However, the policy places on the policyholder the responsibility

to inform the insurer of a change in occupancy. Further, a person may change a billing address for myriad reasons that would not raise a suspicion that residency has changed. As one example, the children of an elderly person may decide to assume the responsibility for paying a parent's bills, and thus make arrangements for those bills to be sent somewhere other than the parent's residential address. Because a billing address may differ from the address of a residence premises for various reasons, the act of notifying Allstate that Ms. McGrath's billing address had changed was insufficient as a matter of law to put Allstate on notice that Ms. McGrath no longer lived full-time at the Gaylord property.

On this discrete question, we agree with the reasoning in *Luster Estate v Allstate Ins Co*, 598 F3d 903 (CA 7, 2010). In that case, Mrs. Luster was injured in a fall when she was 83 years old and, after a hospitalization, she moved to an extended-care facility, leaving unoccupied her home insured by Allstate. *Id.* at 905. Mrs. Luster executed a power of attorney to her lawyer, Rick Gikas, who notified Allstate about his appointment and changed the billing address for the insurance premiums. *Id.* Mrs. Luster never returned to the home, it remained unoccupied, and she died 4½ years after her injury. *Id.* Three months after her death, the house caught fire, and Mr. Gikas filed a claim with Allstate, which denied the claim after learning that the house had been unoccupied for several years. *Id.* When considering whether there was adequate notice by virtue of the change of billing address, the Court opined:

> Gikas didn't notify Allstate until after the fire that the house was unoccupied. He argues that the notice he gave Allstate, shortly after Mrs. Luster left the house for good— that he had a power of attorney and premiums should be billed to his office—gave the insurance company con-

structive notice that the house was unoccupied, or at least obligated the company to inquire about its occupancy. That is a frivolous argument. Allstate knew that Luster was 83, so it would come as no surprise to learn that she had executed a power of attorney and that the holder of the power would be handling her finances. That did not indicate that she'd moved out of the house. [*Id.* at 906.]

As in *Luster*, we hold that the mere change of the billing address by Cathy for her elderly parent did not put Allstate on notice that Ms. McGrath had moved away from the insured property and did not obligate Allstate to inquire further about the occupancy of the home. Indeed, since Cathy notified Allstate of a change in the billing address, she could clearly have advised Allstate of the crucial fact that her mother no longer lived at the Gaylord address. We will not speculate why Cathy failed to do so, but rule only that it was the insured's obligation to do so under the policy. The failure to notify Allstate about the change in occupancy violated the terms of the contract, and Allstate could properly deny coverage for a loss that occurred more than two years later. This constituted another basis on which the trial court should have granted summary disposition to Allstate.

In light of our rulings, we need not consider the other arguments raised on appeal. For the reasons given, we reverse the trial court's denials of summary disposition to Allstate and vacate the judgment on the jury verdict.