NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0144n.06

No. 14-1623

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 24, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| KASEY MCDERMOTT, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  This case involves a dispute about whether defendant-appellant Kasey McDermott's Nationwide Homeowner Policy covers her for fire loss caused by the intentional acts of a co-insured.  On January 13, 2012, McDermott's then-husband, Brien Mathews, accidentally started a fire—while manufacturing and smoking marijuana in their basement—that burned down their home.  McDermott's insurer, Nationwide Mutual Fire Insurance Company, paid McDermott $160,209.50 for the loss.  After learning that Mathews' marijuana lab caused the fire, however, Nationwide challenged its liability through a declaratory action filed in district court.  Following discovery, the district court held: (1) that the policy did not cover McDermott's loss; and (2) that Nationwide was entitled to subrogation for payments made to McDermott following the fire before it learned of the fire's cause.  On appeal, McDermott challenges the denial of her insurance coverage and her liability to Nationwide for

payments made. Because McDermott failed to notify Nationwide of a change in use of her residence, namely that Mathews had set up a marijuana growing operation in the basement of her home, McDermott cannot recover under the terms of the policy, and Nationwide is entitled to subrogation.

In September 2005, McDermott purchased the residence located at 202 South Woodbridge Street in Bay City, Michigan, obtained a mortgage through Chase, and entered into a homeowner-insurance agreement with Nationwide. The insurance policy, which had been renewed annually, was in full force and effect on January 13, 2012, the date of the fire.

In 2010, Brien Mathews, McDermott's then-husband, became a licensed medical marijuana patient and caregiver pursuant to M.C.L. § 333.26421 *et seq*. After obtaining his "registry identification card," Mathews worked "up to eight hours a day" to operate and expand his marijuana operation, an operation that, at the time of the fire, served four patients, including himself. From 2010 to 2012, Mathews spent upwards of $20,000 on lab equipment, purchasing dirt, fertilizer, and "[t]ons of lighting." The operation took place almost exclusively in two rooms in the basement of McDermott's home, though occasionally Mathews stored marijuana in the garage.

After Mathews began growing and distributing marijuana, he learned of a process known as "butane extraction,"[1] which involves drawing liquid butane through chopped marijuana leaves

---

[1] Mathews performed butane extraction in the following manner: First, he took a length of polyvinyl chloride (PVC) pipe and affixed a "coffee filter on the end of it." He then filled the interior of the pipe with chopped marijuana leaves. A cap with a "little hole drilled in the top" was attached to the pipe, opposite the coffee filter. Mathews then inserted the spray nozzle of a butane can through the hole in the cap of the PVC pipe, and emptied its contents into the chopped marijuana leaves. The butane would rush out of the can, pass through the leaves to "strip the Cannabinoids," and then strain through the coffee filter on the other end of the pipe. Mathews would empty six cans through the PVC pipe, let the THC-infused butane run into a glass jar, and then pour the contents of the jar onto a pie plate. Once in the pie plate, the butane would take "hours and hours to evaporate," at which point only the honey oil would remain.

to extract THC[2] and produce "honey oil," a THC-rich substance users smoke. Honey oil would sell for four to eight times as much as marijuana. Mathews understood that butane extraction was risky, because "butane was highly flammable." He knew that he "didn't want to have any source of ignition around the butane." He also knew "not to smoke" when he was using butane, and to keep it away from "open flame" and "any object that sparks."

On January 13, 2012—the day of the fire—Mathews was performing butane extractions when a flame he had lit to smoke some of the honey oil ignited butane that had not yet evaporated. The resulting fire consumed the house and most of their possessions. Though McDermott knew that Mathews had been growing marijuana in the basement, she claims that she did not know about the butane extractions or that butane was flammable.

At the time of the fire in January 2012, McDermott had a Nationwide Homeowner Policy that provided coverage for "accidental direct physical loss to [the] property" described therein. The policy specified which types of losses were not covered, such as those caused by an intentional act of the insured or those "occurring while hazard [was] increased by a means within the control and knowledge of an insured." Further, in a Michigan Amendatory Endorsement to the policy, Nationwide informed McDermott that she had "a duty to notify [Nationwide] as soon as possible of any change which may affect the premium risk under th[e] policy," including "changes . . . in the occupancy or use of the residence premises." Nationwide reserved the right to

> void this policy, deny coverage under this policy, or at [Nationwide's] election, assert any other remedy available under applicable law, if [McDermott], or any other insured person seeking coverage under this policy, knowingly or unknowingly concealed, misrepresented or omitted any material fact or engaged in fraudulent conduct at the time the application was made or at any time during the policy period.

---

[2] THC is tetrahydrocannabinol, the principal psychoactive constituent of the cannabis plant.

Should Nationwide void McDermott's policy under this clause, McDermott would have to reimburse Nationwide for any claim payments previously made.

After the January 2012 fire, McDermott filed a claim for coverage. Nationwide issued checks totaling $160,209.50 to pay for McDermott's losses and to provide for temporary accommodations. However, once investigators discovered that Mathews had been "operating an illegal marijuana and THC manufacturing facility in the basement" and had started the fire while performing butane extractions, Nationwide informed McDermott that her claim was not covered under the policy.

Nationwide subsequently sought relief in district court, requesting that the district court issue a declaration "that [Nationwide] has no duty to provide coverage to Kasey McDermott" pursuant to the policy, and a judgment against McDermott in the amount of $160,209.50 for payments already rendered on her behalf. McDermott, in response, alleged that Nationwide breached the parties' insurance contract and violated Michigan's fire insurance policies, Mich. Comp. Laws § 500.2833, by failing to cover her claims.

On March 29, 2013, Nationwide filed a motion for summary judgment. The district court, in two separate opinions, granted Nationwide's motion, finding that: (1) the policy did not cover McDermott's losses because the fire was not an accident, and, in any event, McDermott was barred from recovery under the Increased Hazard exclusion; and (2) as a result, Nationwide was entitled to subrogation in the amount of $139,841.04 for payments made on McDermott's behalf. On this appeal, McDermott challenges the district court's ruling, arguing that, as an innocent co-insured under Michigan law, she is entitled to recover under the policy despite her then-husband's conduct, and should not be "required to reimburse Nationwide." In response, Nationwide offers numerous grounds for denying coverage to McDermott, including that: (1) the

policy only covers accidental fires, and the fire started by Mathews was not accidental; (2) McDermott failed to report a change in the use of the residence premises as required by the policy; (3) the "increased hazard" exclusion bars coverage; (4) the "intentional acts" exclusion bars coverage because McDermott is not an innocent co-insured; and (5) the "Michigan wrongful conduct rule" bars coverage. However, we need not reach most of Nationwide's arguments because McDermott's failure to report a change in the use of her residence premises independently requires affirmance.

Because McDermott failed to notify Nationwide of the change in use of her basement—notification expressly required by the policy—the district court correctly denied coverage. The "Michigan Amendatory Endorsement" to McDermott's policy provided that McDermott had "a duty to notify [Nationwide] as soon as possible of *any change* which may affect the premium risk under th[e] policy," including, but not limited to, "changes . . . in the occupancy or use of the residence premises." (Emphasis added.) In the same endorsement, Nationwide reserved the right to

> void this policy, *deny coverage* under this policy, or at [Nationwide's] election, assert any other remedy available under applicable law, if [McDermott], or any other insured person seeking coverage under this policy, knowingly or *unknowingly* concealed, misrepresented or omitted any material fact or engaged in fraudulent conduct at the time the application was made or at any time during the policy period.

(Emphasis added.)

McDermott's duty to notify Nationwide of a change in use of the insured residence and Nationwide's accompanying right to void the policy should McDermott "omit[] any material fact . . . at any time during the policy period" are enforceable provisions under M.C.L. § 500.2833(1)(f). M.C.L. § 500.2833(1)(f) permits such provisions provided the fire insurance policy expressly "contain[s] . . . [t]hose conditions which result in the suspension or restriction of

insurance." McDermott failed to fulfill the notification condition by not informing Nationwide of Mathews' marijuana growing operation. During their depositions, both McDermott and Mathews admitted that they had not informed Nationwide that in 2010, Mathews set up a marijuana growing operation in their basement, effectively "changing" the use of the basement from an area "simply used for storage and [their] washer and dryer to an area where [Mathews was] manufacturing and processing marijuana." Because McDermott failed to satisfy the notification condition in her policy and, by so doing, knowingly omitted—in her representations to Nationwide—a "material fact . . . during the policy period," she is not entitled to recovery.

The Court of Appeals of Michigan has previously held a provision similar to the notification requirement here enforceable. In *McGrath v. Allstate Insurance Company*, 802 N.W.2d 619 (Mich. Ct. App. 2010), the insured sought coverage under her homeowner's insurance policy for water damage caused when a pipe ruptured due to lack of heat in the house. *Id.* at 621. Unbeknownst to Allstate, the insured had moved out of her residence approximately two years before the damage occurred. *Id.* at 625. The insured's policy covered losses to the insured's occupied "residence premises," which it defined as her "dwelling." The policy further provided:

> In reliance on the information you have given us, Allstate agrees to provide the coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions, and *inform us of any changes in title, use or occupancy* of the residence premises. . . .
>
> No suit or action may be brought against us unless there has been full compliance with all policy terms.

*Id.* (emphasis added). The court found that "because [the insured] did not reside on the Gaylord property, she did not occupy it, which [wa]s a change requiring notification." *Id.* The court then held that because the "failure to notify Allstate about the change in occupancy violated the terms

of the contract, . . . Allstate could properly deny coverage for a loss that occurred more than two years [after the change in occupancy]." *Id.* at 626. This reasoning was later adopted in an opinion in *Smith v. Allstate Insurance Company*, No. 11-cv-15411, 2013 WL 4604211, at *1 (E.D. Mich. Aug. 29, 2013), when the court denied coverage to an insured's daughter following the insured's death because "[t]he death of the named insured . . . was a material change in the use or occupancy of the Property, and [the daughter's] failure to inform [Allstate] of this change, [as required by the policy] . . . [wa]s a sufficient basis for denial of coverage." *Id.* at *5. Like the insured in *McGrath,* McDermott failed to satisfy one of the terms of her contract, namely her duty to notify Nationwide of a material change in the use of her premises. Consequently, Nationwide can deny coverage for the losses—losses caused by the change in use—that occurred approximately two years after Mathews set up the marijuana growing operation.

The district court did not address whether coverage could be denied because of McDermott's failure to report a change in use, and McDermott contends that whether the use did, in fact, change is a question of fact for the jury. McDermott argues:

> The policy does not envision every "change" be reported to the insurance company. Using Nationwide's analysis, policyholders would be required to call their insurance company every time they bought a houseplant or had visitors. The insurer would have to be called every morning, when children left for school and when parents left for work and would have to be called again, when the family returned to re-occupy the dwelling and especially if the insured turned on the oven to cook dinner or a teen-ager smoked a cigarette. And even if the parent did not know the teen-ager was smoking a cigarette, be it nicotine or marijuana, and accidentally caused a fire, there would be no insurance coverage because the unknowing parent had not reported this "change" to Nationwide.

Though McDermott correctly asserts that her policy "d[id] not envision [that] every 'change' be reported to the insurance company," the policy did require that McDermott report changes in the use of the residence that would affect the premium risk. To equate setting up a marijuana growing operation—an operation not likely contemplated by insurance companies at

the time of drafting a standard fire insurance policy—to buying a houseplant or entertaining guests—both activities an insurance company would reasonably expect a homeowner to do—mischaracterizes the extent of the change in use at issue. Far from merely adding one houseplant, at the time of the fire, Mathews had approximately 28 marijuana plants growing in the basement. Two rooms in the basement had been converted into growing rooms—with one housing plants in the "vegetative state" and the other serving as the "flower room"—and Mathews had spent upwards of $20,000 on lab equipment, including "[t]ons of lighting" and numerous cans of butane. Bay County Sheriff Deputy Jeffrey Wolpert, who investigated the fire, testified that he had never seen a marijuana processing facility as elaborate as the one in McDermott's basement. Further, according to Nationwide's representative, had McDermott informed Nationwide of Mathews' marijuana operation, Nationwide would have declined coverage altogether, because such an operation is an increased hazard and "an unacceptable risk." Thus, because McDermott failed to report the change in use of the premises to Nationwide—a change in use that would have had a great impact on the premium risk—she cannot recover under the policy. To hold otherwise would make Nationwide liable for a risk it did not assume. Though "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured[,] . . . coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. . . . It is impossible to hold an insurance company liable for a risk it did not assume." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992) (internal citations omitted).

Because McDermott is not entitled to recover under the policy, Nationwide is also contractually entitled to subrogation. The mortgage clause clearly and unambiguously provides, "[i]f [Nationwide] pay[s] the mortgagee for loss and den[ies] payment to you[,] . . . [Nationwide

is] subrogated to all the rights of the mortgagee granted under the mortgage on the property." At oral argument, McDermott conceded that should we find that coverage was correctly denied, Nationwide would be entitled to subrogation.

      The judgment of the district court is affirmed.