# STATE OF MICHIGAN

# COURT OF APPEALS

ROSE STRAUSS,

Plaintiff-Appellee,

v

RYAN KANTOLA and SHARON KANTOLA,

Defendants,

and

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

Defendant-Appellant.

UNPUBLISHED
April 10, 2018

No. 337812
Washtenaw Circuit Court
LC No. 16-001051-NI

Before: GADOLA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

In this interlocutory appeal, defendant Farm Bureau General Insurance Company of Michigan (Farm Bureau) appeals by leave granted[1] the trial court's order denying its motion for summary disposition pursuant to MCR 2.116(C)(10). We reverse and remand for entry of an order consistent with this opinion.

Plaintiff, Rose Strauss, initiated this suit seeking damages from defendants Ryan and Sharon Kantola and underinsured motorist (UIM) benefits from Farm Bureau. In her complaint, plaintiff alleges that she sustained injuries in an automobile accident on December 17, 2015. According to the complaint, plaintiff was a passenger in a vehicle traveling westbound on I-94 when a vehicle owned by Sharon Kantola, and driven by defendant Ryan Kantola, negligently collided with the vehicle in which plaintiff was a passenger. Plaintiff claims that she suffered

---

[1] This Court granted Farm Bureau's application for leave to appeal limited to the issues raised in the application. *Strauss v Kantola*, unpublished order of the Court of Appeals, entered May 11, 2017 (Docket No. 337812).

serious and permanent injuries. The Kantolas are covered by a policy of automobile insurance providing coverage for bodily injury liability up to $250,000 per person. Plaintiff alleges that if the Kantolas' underlying bodily injury coverage is insufficient to compensate her for her injuries, Farm Bureau, as plaintiff's insurer, will be obligated to pay UIM benefits.

Farm Bureau issued a policy of automobile insurance to plaintiff, including UIM coverage up to $300,000 per person per occurrence. This policy incorporated an Underinsured Motorist Endorsement, which provides in pertinent part:

b. Coverage under this endorsement shall be void if:

(1) an Insured agrees to settle a bodily injury claim without our permission[.]

* * *

c. The following shall not occur until after the limits of liability under all other liability bonds or policies that apply at the time of the accident have been exhausted by payment of judgments or settlements:

(1) No action by way of a suit shall be brought against us[.]

Farm Bureau moved for summary disposition pursuant to MCR 2.116(C)(10) on the ground that the clear and unambiguous language of subparagraph (c)(1) of the Underinsured Motorist Endorsement barred suit against Farm Bureau until the limits of all other applicable policies had been exhausted by payments of judgments or settlements. At the hearing on the motion, Farm Bureau argued that it did not believe that plaintiff's injuries would warrant even $250,000 in damages and that it should not be required to expend the costs necessary to its involvement in the suit when its exposure to liability is limited to $50,000. Farm Bureau admitted that if plaintiff did receive a judgment for $300,000 or more in damages, plaintiff potentially would be obligated to relitigate the issues of liability and damages, this time against Farm Bureau, to collect the remaining $50,000 in UIM benefits. Plaintiff argued that subparagraphs (b)(1) and (c)(1) of the endorsement conflict because the two provisions, read in conjunction, require plaintiff to obtain Farm Bureau's permission on any settlement to avoid forfeiting coverage, but do not allow plaintiff to join Farm Bureau as a party to the litigation.

The trial court agreed with plaintiff that the two provisions created ambiguity because subparagraph (b)(1) suggests that a plaintiff must include Farm Bureau in the litigation, while subparagraph (c)(1) prohibits bringing Farm Bureau into the lawsuit until other policy limits have been exhausted. The trial court therefore denied Farm Bureau's motion for summary disposition.

On appeal to this Court, Farm Bureau contends that the trial court erred by denying its motion for summary disposition. We agree. We review de novo questions of contractual interpretation, *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012), including whether contractual language is ambiguous. *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999). We also review de novo the grant or denial of summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). A motion for

summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). This Court reviews the record in the same manner as the trial court, "consider[ing] affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

Michigan law does not require underinsured-motorist coverage. *Dawson v Farm Bureau Mut Ins Co of Mich*, 293 Mich App 563, 568; 810 NW2d 106 (2011). "Because such insurance is not mandated by statute, the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts." *Id*. (citation omitted). This Court in *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010), summarized:

> The rules of contract interpretation apply to the interpretation of insurance contracts. *Citizens Ins Co v Pro–Seal Serv Group, Inc*, 477 Mich 75, 82; 730 NW2d 682 (2007). The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). When the policy language is clear, a court must enforce the specific language of the contract. *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 160; 534 NW2d 502 (1995). However, if an ambiguity exists, it should be construed against the insurer. *Id*. An insurance contract is ambiguous if its provisions are subject to more than one meaning. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009), citing *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982).

An insurance contract is also ambiguous "if two provisions of the same contract irreconcilably conflict with each other[.]" *Klapp*, 468 Mich at 467. But this Court will "not strain to find ambiguity" and will "ultimately strive to enforce the agreement intended by the parties." *Scott v Farmers Ins Exch*, 266 Mich App 557, 561; 702 NW2d 681 (2005).

Subparagraph (c)(1) of Farm Bureau's Underinsured Motorist Coverage Endorsement, standing alone, is not ambiguous. The plain and ordinary meaning of the words in the provision make it subject to only one meaning, being that plaintiff cannot sue Farm Bureau until after the limits of liability under all other policies that apply have been exhausted. This Court in *Dawson* concluded that a provision similar to the one in this case in a policy issued by Farm Bureau was unambiguous. *Dawson*, 293 Mich App at 569 ("[T]he policy is also clear that Farm Bureau cannot be sued for underinsured-motorist benefits unless and until other payments or judgments are exhausted"). Similarly, the type of "consent to settle" provision in subparagraph (b)(1) has been found by this Court to be unambiguous. See *Lee v Auto-Owners Ins Co (On Second Remand)*, 218 Mich App 672, 676; 554 NW2d 610 (1996).

Plaintiff argues, and the trial court determined, that subparagraph (c)(1) is ambiguous because it conflicts with subparagraph (b)(1). We disagree. For two unambiguous provisions to work together to render a contract ambiguous, they must "irreconcilably conflict." *Klapp*, 468

Mich at 467. In this case, subparagraphs (b)(1) and (c)(1) do not irreconcilably conflict because plaintiff can comply with both provisions to maintain coverage. Although plaintiff must seek Farm Bureau's permission to settle her claim to avoid losing her UIM benefits, there is nothing that requires that Farm Bureau be a party to the litigation to give that permission. Thus, plaintiff has the option of litigating her claim against the Kantolas and then suing Farm Bureau for any amount in excess of all other policies to which plaintiff can prove entitlement. While the juxtaposition of the two provisions arguably may create an unreasonable outcome where plaintiff is forced to twice litigate the issues of liability and damages, "a mere judicial assessment of 'reasonableness' is an invalid basis upon which to refuse to enforce contractual provisions." *Rory v Continental Ins Co*, 473 Mich 457, 470; 703 NW2d 23 (2005)

Although a clause in an insurance policy does not have to be reasonable, this Court should ensure that it is not in contravention of public policy. See *Nikkel*, 460 Mich at 568. "[T]he determination of Michigan's public policy is not merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law." *Rory*, 473 Mich at 471-472 (quotation marks and citation omitted). Therefore, this Court looks to "policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law." *Id*. (quotation marks and citation omitted).

In this case, neither provision standing alone cuts against public policy. The combination of the two provisions potentially requires plaintiff to twice litigate the issues of liability and damages—once against the Kantolas to recover from their policy and once against Farm Bureau to recover the additional UIM benefits—which arguably wastes the courts' resources, running "contrary to important public policy favoring judicial economy." *Sumner v Gen Motors Corp (On Remand)*, 245 Mich App 653, 666; 633 NW2d 1 (2001). We conclude, however, that the policy favoring enforcement of unambiguous contracts as written outweighs the policy favoring judicial economy, given this Court's affirmation of the former policy in countless decisions. See, e.g., *McGrath*, 290 Mich App at 439; *Scott*, 266 Mich App at 561.

We reverse and remand for entry of an order consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan