*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SONG YU and SANG CHUNG,

      Plaintiffs-Appellants,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

      Defendant-Appellee.

UNPUBLISHED
May 21, 2019

No. 331570
Ingham Circuit Court
LC No. 14-001421-CK

ON REMAND

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

This matter is again before us, following a remand by the Supreme Court in which it reversed our original decision and remanded the matter to this Court "for consideration of the remaining issue raised by the parties but not addressed by that court in its initial review of the case." *Song Yu v Farm Bureau Gen Ins Co of Mich*, ___ Mich ___; 919 NW2d 399 (SC Docket No. 155811, rel'd 11/21/18). We now affirm.

Defendant denied coverage for plaintiffs' water-damage claim arising from frozen pipes on three grounds: (1) that the premises was not a "residence premises" as required under the policy, (2) that the property had been vacant for more than 60 consecutive days, and (3) that the property had been unoccupied for more than six consecutive months. We declined to address the specifics of these arguments, agreeing with plaintiffs that defendant was equitably estopped from denying coverage. The Supreme Court disagreed, leading to this remand. *Id.* We need not address the issues regarding whether the property was "vacant" or "unoccupied" as we agree that it was not a "residence premises" under the insurance policy.

The homeowners policy at issue here provided for coverage for a dwelling on the "residence premises." It defines "residence premises" as follows:

"Residence premises" means:

a. the one family dwelling, other structures, and grounds;

b. a two, three, or four family dwelling (where you reside in at least one of the family units), other structures, and grounds; or

c. that part of any other building;

where you reside and which is shown in the Declarations of this policy.

The terms "dwelling" and "reside" are undefined in the policy. But, we are persuaded that this case is controlled by our opinion in *McGrath v Allstate Ins Co*, 290 Mich App 434; 802 NW2d 619 (2010). Initially, we look to *McGrath*'s summary of the rules related to contract interpretation:

> The rules of contract interpretation apply to the interpretation of insurance contracts. *Citizens Ins Co v Pro–Seal Serv Group, Inc,* 477 Mich 75, 82; 730 NW2d 682 (2007). The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. *Klapp v United Ins Group Agency, Inc,* 468 Mich 459, 467; 663 NW2d 447 (2003). When the policy language is clear, a court must enforce the specific language of the contract. *Heniser v Frankenmuth Mut Ins Co,* 449 Mich 155, 160; 534 NW2d 502 (1995). However, if an ambiguity exists, it should be construed against the insurer. *Id.* An insurance contract is ambiguous if its provisions are subject to more than one meaning. *Vushaj v Farm Bureau Gen Ins Co of Mich,* 284 Mich App 513, 515; 773 NW2d 758 (2009), citing *Raska v Farm Bureau Mut Ins Co of Mich,* 412 Mich 355, 362; 314 NW2d 440 (1982). An insurance contract is not ambiguous merely because a term is not defined in the contract. *Vushaj,* 284 Mich App at 515. Any terms not defined in the contract should be given their plain and ordinary meaning, *id.,* which may be determined by consulting dictionaries, *Citizens Ins Co,* 477 Mich at 84. [*McGrath*, 390 Mich App at 439.]

In *McGrath*, the homeowner had lived in her Gaylord, Michigan home for most of the year, but spent the winters in Florida. *Id.* at 436. But, several years after purchasing the home, she became unable to care for herself and moved to an apartment in Farmington Hills to be closer to family and doctors. *Id.* at 437. She continued to own the Gaylord home, leaving many of her belongings there. McGrath and other family members occasionally visited property. Like the house in this case, the McGrath home suffered extensive water damage due to a frozen pipe. The relevant language from the policy provided coverage for a "residence premises" which was defined as a "dwelling" which in turn was defined as a "building structure" "where you reside." *Id.* at 440.

In reaching its decision, the Court agreed with the insurer that "where you reside" required that the insured live at the premises when the loss occurred:

> We agree with Allstate. *Random House Webster's College Dictionary* (2000) defines the verb "reside" in part as "to dwell permanently or for a considerable time; live." Accord *The American Heritage Dictionary of the English Language* (3d ed, 1996) ("To live in a place permanently or for an extended period."). The policy states that the "insured premises" means "the residence premises" and the coverage section states that the insured's "dwelling" is the covered property. (Boldface omitted.) The definition of "residence premises" uses the word "dwelling," which is specifically defined as a building structure "*where you reside* and which is principally used as a private residence." (Emphasis added and boldface omitted.) Thus, the term "dwelling" is an integral part of the term "residence premises," which in turn is an independent part of the term "insured premises." In *Heniser,* 449 Mich at 167, our Supreme Court ruled that, because the phrase "where you reside" was "not used to describe the dwelling but is an independent part of the definition of 'residence premises,' " the phrase is not merely an affirmative warranty, but requires that the insured reside at the premises at the time of the loss. [*McGrath*, 290 Mich App at 441.]

In reaching its conclusion that McGrath no longer resided in the Gaylord house, the Court discussed the difference between being away from one's residence, even for an extended period of time, and merely occasionally visiting a property that you still own but in which you no longer reside:

> The multiple risks assumed by an insurer in exchange for an insurance premium are tied to an understanding that the building structure covered is where the insured dwells either permanently or for a considerable period because the risks assumed are clearly affected by the presence of the insured in the dwelling and the associated activities stemming from this presence. Unoccupied or vacant homes, with no resident present to oversee security or maintenance, are at greater risk for break-ins, vandalism, fire, and water damage of exactly the kind that occurred in this case. We recognize that an insured may be away from a property temporarily for travel or because of illness, and the policy clearly contemplates temporary absences, without curtailing coverage. As one example, the frozen-pipes exclusion limits an insured's ability to recover for a loss when a building structure is vacant or unoccupied unless the insured takes reasonable measures to prevent such damage. This exclusion implicitly recognizes that the insured may be away from the property, but be covered for the loss. This is not inconsistent with the definition of "reside" as defined above. Indeed, the fact that Ms. McGrath had established the habit of vacationing in Florida during the winters in the 1990s did not change the character of the dwelling or her living arrangements. During that time, she resided on the property, albeit for fewer than 12 months of the year, but it remained her home base and the residence to which she regularly returned. At issue here is undisputed evidence that Ms. McGrath lived full-time in an apartment in Farmington Hills for more than two years before the loss occurred. She traveled once to the property for a very brief visit during those

years, and it is clear that the Farmington Hills apartment had become her fixed residence. Because Ms. McGrath did not reside at the Gaylord property, she failed to comply with the policy terms, and the trial court erred when it denied Allstate's motions for summary disposition. [*Id.* at 445.]

Plaintiffs do claim to have visited the Portage property somewhat more frequently than was the case in *McGrath*, perhaps once a month or so. But we do not find this to be a sufficient basis to distinguish this case from *McGrath*. Even accepting all of plaintiffs' claims, they resided in the Lansing area for over three years before the loss at issue here. That is, to use *McGrath*'s terminology, the apartment in Okemos and later the home in East Lansing had become their "home base" and the location to which they "regularly returned." *Id.* More importantly, that no longer describes the Portage home. Accordingly, with the argument of equitable estoppel no longer being available to plaintiffs, we conclude that the trial court did not err in granting summary disposition in favor of defendant.

Affirmed. Defendant may tax costs.

/s/ Mark J. Cavanagh
/s/ David H. Sawyer
/s/ Deborah A. Servitto

-4-