*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Plaintiff-Appellee,

v

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

       Defendant-Appellant.

UNPUBLISHED
March 20, 2026
1:00 PM

No. 371995
Oakland Circuit Court
LC No. 2023-199813-CZ

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

In this subrogation action, defendant Nationwide Mutual Fire Insurance Company appeals by leave granted[1] the trial court's order denying summary disposition in its favor. Because we hold that plaintiff State Farm has not established the existence of a disputed fact that would prevent summary disposition under MCR 2.116(C)(10), we reverse.

## I. FACTUAL BACKGROUND

This case has a lengthy and circuitous history that began in March 2020 with a hit-and-run accident. On March 27, 2020, 15-year-old KL was seriously injured when she, a pedestrian, was hit by a car. The driver fled the scene, and the police were unable to identify the vehicle or its driver. KL was treated by Bronson Health Care Group, Inc. and Mary Free Bed Rehabilitation Hospital for her injuries.

At the time of the accident, KL lived with her mother, Sarah Cormier, her mother's partner Armel Mampouya, and her two half-sisters who were the biological children of Cormier and Mampouya. Cormier and Mampouya never married, so Mampouya was not KL's legal stepfather.

---

[1] *State Farm Mut Auto Ins Co v Nationwide Mut Fire Ins Co*, unpublished order of the Court of Appeals, entered February 13, 2025 (Docket No. 371995).

-1-

However, Mampouya "consider[ed] and treat[ed] [KL] as a daughter, providing her with care and protection as a father would . . . ."

Mampouya maintained a no-fault insurance policy with State Farm that was in effect at the time of KL's accident. The policy provided personal injury protection (PIP) coverage for the insured and any resident relative, which was defined as follows:

> **Resident Relative** means a **person**, other than **you**, domiciled in the same household with the first **person** shown as a named insured on the Declarations Page and who is:
>
> 1. related to that named insured or his or her **spouse** by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her domicile with that named insured; or
>
> 2. a ward or a foster child of that named insured, his or her **spouse**, or a person described in 1. above. [Emphasis in original.]

The family filed a claim under Mampouya's State Farm policy for PIP coverage for KL's accident, but State Farm denied the claim because KL was not an insured person or a relative under Mampouya's policy. Later, an application for PIP benefits was filed with the Michigan Automobile Insurance Placement Facility (MAIPF) on behalf of Bronson, Mary Free Bed, and KL, and the claim was assigned to Nationwide. Nationwide refused to pay the claim.

## A. KALAMAZOO CIRCUIT COURT LITIGATION

In February 2021, Bronson and Mary Free Bed filed suit against State Farm and Nationwide in Kalamazoo Circuit Court, seeking payment for the treatment they provided to KL. Acting as KL's next friend, Cormier intervened in the Kalamazoo lawsuit, also seeking the payment of benefits from State Farm or Nationwide.

Both parties have presented evidence to this Court about what happened in the Kalamazoo litigation that was not presented to the trial court. What is clear from the evidence in the lower-court record is that State Farm paid Bronson $541,000 ($444,998.89 in principal charges plus $96,001.11 in interest) and Mary Free Bed $45,000 ($35,993.35 plus $9,006.65) to settle the claims between the providers and State Farm in August 2022. In settling these claims, State Farm reserved the "rights, defenses, or causes of action that State Farm . . . has regarding any other claims for no-fault benefits paid, or payable to, or for the benefit of, or on behalf of [KL] . . . ." The release also made clear that State Farm was not admitting liability by entering into the release. The register of actions reflects that the trial court entered a stipulation and order dismissing Bronson and Mary Free Bed from the action on August 12, 2022.

The case between Cormier and State Farm was tried before a jury over four days in September 2022. On September 29, 2022, the court entered a judgment reflecting that the jury returned a verdict in favor of Cormier in the amount of $215,632.19. The court later granted Cormier's motion for the imposition of no-fault sanctions, which State Farm appealed as of right. That appeal was later dismissed by stipulation of the parties.

## B. OAKLAND CIRCUIT COURT LITIGATION

State Farm then filed the present subrogation action in Oakland Circuit Court, requesting that Nationwide reimburse State Farm for the PIP benefits it paid on KL's behalf because KL was not covered under Mampouya's policy.

The parties filed cross-motions for summary disposition. Nationwide argued that State Farm was precluded from relitigating the issue of priority because a jury in the Kalamazoo litigation rendered a verdict against it, so res judicata required that the current lawsuit be dismissed. Additionally, Nationwide contended that State Farm's claims failed on the merits because KL was a "ward" under the terms of the State Farm policy, such that KL was covered by the policy. State Farm, in contrast, argued that KL was not a legally appointed ward of Mampouya, so State Farm was not obligated to provide coverage for KL.

After oral argument, the trial court issued two separate orders addressing the pending motions. In its order addressing Nationwide's motion for summary disposition, the trial court rejected Nationwide's arguments regarding res judicata, holding that "the priority dispute was never litigated between Nationwide and State Farm in the Kalamazoo lawsuit and could not have been resolved in that action where Nationwide and State Farm were not opposing parties." The trial court also denied State Farm's motion for summary disposition, concluding, based on prior caselaw and the dictionary definition of the term "ward," that a ward is "not limited to a formal court-sanctioned arrangement and must be determined based on the facts of the case." The trial court ultimately concluded that questions of fact existed as to whether KL was Mampouya's ward, which prevented summary disposition under MCR 2.116(C)(10).[2] This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision to grant or deny summary disposition de novo. *Krieger v Dep't of Environment, Great Lakes, & Energy*, 348 Mich App 156, 170; 17 NW3d 700 (2023).

Nationwide argues that the trial court erred when it denied Nationwide's motion for summary disposition under MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When reviewing a motion brought under MCR 2.116(C)(10), the trial court considers

---

[2] Nationwide moved for reconsideration of the trial court's order denying its motion for summary disposition, arguing that the court did not address Nationwide's arguments under MCR 2.116(C)(10) in its written opinion, and that there was no genuine issue of material fact because State Farm did not submit any admissible evidence as to whether KL was a ward of Mampouya's. The trial court granted the motion to the extent that its prior order did not address Nationwide's request under MCR 2.116(C)(10), but denied relief on this basis because reasonable minds could disagree as to whether KL was a ward of Mampouya's based on the facts in Mampouya's affidavit. Nationwide then moved for reconsideration a second time, arguing that the trial court committed palpable error in denying its motion for summary disposition under MCR 2.116(C)(10). The trial court denied this motion.

affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties in the light most favorable to the nonmoving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the moving party meets its initial burden, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. When the nonmoving party has the burden of proof at trial, it must submit evidence that demonstrates a genuine issue of material fact exists and may not rest on mere allegations or denials in the pleadings. *Id*. at 362-363. "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. at 363. In other words, "[i]f no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020).

Additionally, this Court reviews a trial court's interpretation of contractual language and the legal effect of a contractual clause de novo. *In re Koch Estate*, 322 Mich App 383, 398; 912 NW2d 205 (2017).

### III. "WARD" IN MAMPOUYA'S POLICY

Nationwide argues that although the trial court identified the generally correct interpretation of the term "ward" as used in the State Farm policy, it erred by denying summary disposition to Nationwide on this basis. We agree.

### A. PRINCIPLES OF CONTRACT INTERPRETATION

Because insurance policies are contractual agreements, "[t]he rules of contract interpretation apply to the interpretation of insurance contracts." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). Accordingly, insurance contracts must be "read as a whole and must be construed to give effect to every word, clause, and phrase." *Id*. When the language of the contract is clear, courts must enforce the contract as written. *Id*. "However, if an ambiguity exists, it should be construed against the insurer." *Id*.

A contract provision is ambiguous if it is susceptible to more than one reasonable interpretation. *Id*. The mere fact that the policy does not define a term will not render the policy ambiguous. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999). Rather, when a contract term is not defined, the term should be given its plain and ordinary meaning, "which may be determined by consulting dictionaries." *McGrath*, 290 Mich App at 439 (citation omitted). When the language used in the contract has a definite legal meaning, "the parties to the contract are presumed to have intended such terms to have their proper legal meaning, absent a contrary intention appearing in the instrument." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 58; 698 NW2d 900 (2005) (citation and quotation marks omitted). However, "[w]hen considering a word or phrase that has not been given prior legal meaning, resort to a lay dictionary such as *Webster's* is appropriate." *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 84; 730 NW2d 682 (2007) (quotation marks and citation omitted). Indeed, when the disputed contractual term is not a legal term, it should not be defined using a legal dictionary. *Wasik v Auto Club Ins Ass'n*, 341 Mich App 691, 704-705; 992 NW2d 332 (2022).

When insurance coverage is mandated by statute, then the "the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits." *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310 (1993). See also *Meemic Ins Co v Fortson*, 506 Mich 287, 297-298; 954 NW2d 115 (2020) ("[O]ne thing that is not open to debate is that the [no-fault] act governs the coverages it mandates . . . ."). Consequently, when interpreting a statute requiring insurance coverage, a court must adhere to the principles of statutory construction. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 528; 676 NW2d 616 (2004). However, when insurance coverage is not mandated by statute, the policy is interpreted using the ordinary principles of contract interpretation. *Id*. at 533.

## B. ANALYSIS

The language in Mampouya's insurance policy provides for PIP coverage for the named insured and "any ***resident relative*** . . . ." "Resident relative" is itself a defined term:

> ***Resident Relative*** means a ***person***, other than ***you***, domiciled in the same household with the first ***person*** shown as a named insured on the Declarations Page and who is:
>
> 1. related to that named insured or his or her ***spouse*** by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her domicile with that named insured; or
>
> 2. a ward or a foster child of that named insured, his or her ***spouse***, or a person described in 1. above.

The parties agree that coverage under the policy hinges on whether KL is Mampouya's ward. Ward is not a defined term in the policy. This Court has examined the use of the term ward in similar contractual provisions in two published cases. The first is *Hartman v Ins Co of North America*, 106 Mich App 731; 308 NW2d 625 (1981). In *Hartman*, a bicyclist was seriously and permanently injured in an accident with a motor vehicle. *Id*. at 735. The bicyclist, William Prince, was a disabled adult who had been committed to the care of the state at an early age and lived in a private group-living facility operated by Mary and Edward Baumgarten under a contract with the Center for Human Development, a state agency. *Id*. At the time of the accident, the Baumgartens had a no-fault insurance policy with the defendant Insurance Company of North America (INA) that provided coverage for the named insured and any relatives, which was defined in the policy to include "a person related to the Named Insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the Named Insured." *Id*. at 738. Consequently, this Court was tasked with determining whether Prince was a ward of the Baumgartens at the time of the accident such that he would qualify for coverage under the policy. *Id*. This Court began its analysis by defining the term broadly:

> It is obvious that the term "ward" as used in INA's policy should not be restricted in its definition to include only a person on behalf of whom a legal guardian has been appointed by a court of competent jurisdiction. Rather, a common and ordinary dictionary definition of "ward", offered by Webster's Third New International Dictionary (1965), p. 2575, is "a person * * * under the

protection or tutelage of a person". It is therefore necessary to examine the factual context of the case at bar to determine whether William Prince was a "ward" of the Baumgartens as that word is used in common parlance. [*Id*. at 739 (alteration in *Hartman*).]

This Court then went on to analyze whether Prince was a ward using this broad definition. See *id*. The Baumgartens were required to provide care for Prince under a contract with a state agency, and Mary testified that she did not consider the residents of the group home to be a part of her family, and she did not provide them with medical care, buy clothing for them, or maintain insurance for their benefit. *Id*. However, the Baumgartens brought the men on outings and had parties for them; made sure that they bathed, shaved, and changed their clothing; administered medicine to the residents; and were even called "mom" and "dad" by the residents. *Id*. This Court held that under these facts and circumstances, Prince was the Baumgartens' ward within the common and ordinary definition of the term. *Id*. at 740.[3]

Nearly two decades later, this Court was again asked to examine the term ward in another insurance priority dispute. In *US Fidelity & Guaranty Co v Citizens Ins Co*, 241 Mich App 83, 84; 613 NW2d 740 (2000), Dennis Flynn, a man living with Down's syndrome, walked out of the state-licensed adult foster care facility where he lived and was struck by a car. The state-licensed facility was owned by Paragon, a nonprofit corporation, which maintained a no-fault insurance policy with the plaintiff insurance company. *Id*. Paragon's policy provided coverage for the insured and any "family member," which included "a person related to you by blood, marriage or adoption who is a resident of your household, *including a ward* or foster child." *Id*. at 86 (emphasis in *US Fidelity*). We reaffirmed our holding in *Hartman* and extended its impact by holding that

---

[3] The dissent rejects consideration of the dictionary definition relied upon in *Hartman*, reasoning that "a 45-year-old case which relies on a single 60-year-old dictionary's definition of a word is [not] a reliable source for determining how that word is understood today." It is true that the consideration of modern dictionaries—as opposed to older dictionaries, such as the one cited in *Hartman*—is appropriate when the meaning of a word has undergone "recent shifts in meaning." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p. 419. However, assuming that the term "ward" has, in fact, shifted in meaning since *Hartman* was issued, that shift is irrelevant because there is nothing to suggest that the term "ward" as used in the no-fault policy at issue would be subject to that new meaning.

This is because the language of the policy in *Hartman* referring to "ward" is remarkably similar to the language of the policy here, and the language in other such cases, referring to "ward," which strongly indicates that this general language is commonplace, and has been used for decades, in the insurance context. Therefore, the consideration of a modern dictionary in this case, as opposed to an older dictionary, is unwarranted because the older definition is more appropriate. See *id*. To illustrate, our Supreme Court has explained that older dictionaries should be used to identify the meaning of the term "loss" in a statute originally enacted in 1912, notwithstanding that the statute has since been repeatedly amended. See *Cain v Waste Management, Inc*, 472 Mich 236, 246-247; 697 NW2d 130 (2005).

Flynn was a ward of Paragon even though Paragon was a corporation because Paragon exercised complete control over its residents' lives. *Id*. at 88-89.

These cases make clear that an insurance contract which provides coverage for a ward must be interpreted in accordance with the plain and ordinary meaning of the term. Under the plain and ordinary meaning of the term "ward," it is not limited to a formal, court-appointed relationship, and it may include a person under the protection, care, and tutelage of another. *Hartman*, 106 Mich App at 739. See also *Serra v Estate of Broughton*, 364 P3d 637, 641; 2015 OK 82 (2015) (defining "ward" for the purposes of an insurance contract as "under the care and protection of the insured" and "within the domestic circle of, and are economically dependent on"). Consequently, the trial court correctly determined that "the term 'ward' is not limited to a formal court-sanctioned arrangement and must be determined based on the facts of the case."

State Farm's reliance on the doctrine of *noscitur a sociis* in advocating for the opposite result is unavailing. Under the doctrine of *noscitur a sociis*, or the associated-words canon, "when several words are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar. The canon especially holds that words grouped in a list should be given related meanings." *Atlantic Cas Ins Co v Gustafson*, 315 Mich App 533, 541; 891 NW2d 499 (2016) (quotation marks and citation omitted). However, as noted by Nationwide, the fact that ward and foster child appear in a series does not mean that both should be interpreted to require a court-sanctioned relationship. Rather, they share another similarity: both relationships entail taking care of a person who is not related by blood. Indeed, in the insurance policy at issue in *Hartman* that provided coverage for "a person related to the Named Insured by blood, marriage or adoption (including a ward or foster child)," the argument for requiring a ward to have a court-sanctioned relationship was even stronger because ward was listed in a series with adoption and foster care, and yet this Court held that a formal court-appointed guardian was not required. *Hartman*, 106 Mich App at 739. Consequently, State Farm's reliance on the doctrine of *noscitur a sociis* is misplaced.

In light of the trial court's correct determination that the term "ward" is not limited to formal, court-sanctioned relationships, we must decide whether the trial court nevertheless incorrectly determined that questions of fact prevented it from ruling on whether, as a matter of law, KL was Mampouya's ward within the meaning of the policy. To do so, we must re-examine its analysis under the burden-shifting framework of MCR 2.116(C)(10). As the moving party, Nationwide had the initial burden of supporting its position that KL was Mampouya's ward "by affidavits, depositions, admissions, or other documentary evidence." *Quinto*, 451 Mich at 362. Accordingly, Nationwide presented Mampouya's affidavit, in which he averred, in essence:

1. On the day of the accident, KL lived with Mampouya, Cormier, and KL's two younger half-sisters who are Mampouya and Cormier's biological children.

2. Mampouya considered the five members of the household to be a "family unit."

3. Mampouya treated KL as a daughter and provided her with "care and protection as a father would," just like he did for his two biological children with Cormier.

4. KL, in turn, considered Mampouya to be a father-figure.

5. KL, who was 15-years-old at the time of the accident, had lived with Mampouya since she was nine.

6. Mampouya and Cormier pooled their resources to provide for their family unit, including KL. Mampouya contributed at least 25% of the funds for food, clothing, and shelter for KL.

7. In addition to providing for KL financially, Mampouya also performed other parental tasks such as picking KL up from school, serving as her emergency contact for school, picking up her prescription medications, offering her advice and guidance, taking her on family outings, disciplining her, and keeping track of her comings and goings.

This affidavit, when viewed as a whole, was sufficient to meet Nationwide's initial burden of demonstrating that KL was Mampouya's ward under the definitions provided in Michigan caselaw because it demonstrates that KL was under Mampouya's protection and tutelage. *Hartman*, 106 Mich App at 739.

The burden then shifted to State Farm to establish that a genuine issue of material fact existed on this issue. *Quinto*, 451 Mich at 362-363. State Farm did not submit any evidence to meet this burden, instead relying on its legal argument, which was correctly rejected by the trial court, that the term "ward" must be interpreted narrowly to require a court-imposed relationship. State Farm did not reference or attach evidence demonstrating the existence of a genuine issue of material fact as to whether KL was Mampouya's ward under the plain and ordinary meaning of the term. Consequently, State Farm essentially left Nationwide's evidence unrebutted. Because State Farm failed to "present documentary evidence establishing the existence of a material factual dispute," Nationwide was entitled to summary disposition under MCR 2.116(C)(10), and the trial court erred when it denied Nationwide's motion for summary disposition due to the existence of a disputed issue of fact. *Id*. See also *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 375; 775 NW2d 618 (2009).[4]

IV. CONCLUSION

---

[4] The dissent asserts that the policy implications of the "ward" definition adopted herein are troubling because "[d]efining a 'ward' as a person 'under the protection or tutelage of' another means that virtually every time a parent leaves a child in the care of another, that child may well become that person's 'ward.'" However, the term "ward" is expressly limited in the no-fault policy here to those persons "domiciled in the same household with the first **person** shown as a named insured on the Declarations Page." By the same measure, the term "ward" in *Hartman* was expressly limited to those persons who were "resident[s] of the same household as the Named Insured." *Hartman*, 106 Mich App at 738. Thus, no-fault insurers are capable of contractually limiting liability to exclude the multiple hypotheticals identified by the dissent.

For the reasons discussed above, we reverse the trial court's order denying Nationwide's motion for summary disposition under MCR 2.116(C)(10) based on the existence of a disputed issue of fact as to whether KL was Mampouya's ward.[5]

Reversed and remanded to the trial court for entry of summary disposition in favor of Nationwide under MCR 2.116(C)(10).  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Adrienne N. Young

---

[5] Because we have determined that summary disposition in Nationwide's favor was warranted under MCR 2.116(C)(10), we need not decide whether Nationwide also would be entitled to summary disposition under MCR 2.116(C)(7) because the issue is moot.  See *Detroit Media Group, LLC v Detroit Bd of Zoning Appeals*, 339 Mich App 38, 63-64; 981 NW2d 88 (2021).