*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GRAZIELLA BRUNER,

   Plaintiff-Appellant,

v

ALISHA DANIELLE CALDWELL, USA
UNDERWRITERS, MICHIGAN ASSIGNED
CLAIMS PLAN, and MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY,

   Defendants,

and

FEDERATED RESERVE INSURANCE
COMPANY,

   Defendant-Appellee.

UNPUBLISHED
June 10, 2026
10:02 AM

No. 372017
Wayne Circuit Court
LC No. 23-001871-NI

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

PER CURIAM.

  In this no-fault action, plaintiff challenges the trial court's summary disposition orders dismissing her claims for personal injury protection (PIP) benefits and uninsured motorist (UM) and underinsured motorist (UIM) benefits against defendant, Federated Reserve Insurance Company, under MCR 2.116(C)(10) (no genuine issue of material fact). Because this Court recently addressed plaintiff's arguments regarding the order of priority in MCL 500.3114(5) and held that the statute permits a claimant to recover from more than one insurer in the order of priority, we reverse the trial court's summary disposition of plaintiff's PIP claim against Federated Reserve. However, we affirm the trial court's dismissal of plaintiff's claims for UM/UIM benefits.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The facts in this case are largely uncontested. On August 11, 2022, plaintiff was driving her motorcycle in Wayne, Michigan, when she was hit by a vehicle owned and operated by defendant Alisha Danielle Caldwell. As a result of the accident, plaintiff required medical treatment for her extensive injuries.

Caldwell maintained an insurance policy with defendant USA Underwriters which provided for $250,000 in PIP medical coverage as well as $50,000 per person and $100,000 per accident in bodily-injury liability coverage. The parties do not dispute that this policy was first in the order of priority for payment of plaintiff's PIP benefits under MCL 500.3114(5). On October 23, 2023, USA Underwriters tendered the $250,000 allowable expense limit under Caldwell's policy to plaintiff for payment of her PIP claim. USA Underwriters also tendered the entirety of the $50,000 bodily-injury liability limit to plaintiff. Consequently, it is undisputed that coverage under Caldwell's policy was exhausted.

A second insurance policy was in effect at the time of the accident that is also relevant to the present case. Specifically, defendant Federated Reserve issued a policy listing "Bruner Plumbing & Heating Co" as the named insured. Plaintiff was not listed as an insured in the Federated Reserve policy, nor was her motorcycle insured under the policy. However, plaintiff's husband, James Bruner, was a named *individual* under the Federated Reserve policy for PIP and UM/UIM coverage.

In February 2023, plaintiff filed her complaint advancing, as relevant to the present dispute, a UIM claim against Federated Reserve, a UM claim against Federated Reserve, and a claim for first-party PIP benefits against Federated Reserve. Caldwell, USA Underwriters, the Michigan Assigned Claims Plan, and the Michigan Automobile Insurance Placement Facility were also named as defendants but were later dismissed by stipulation of the parties and are not parties to this appeal. In December 2023, Federated Reserve moved for summary disposition of plaintiff's PIP claims under MCR 2.116(C)(10), arguing that because USA Underwriters was highest in priority to provide plaintiff's PIP benefits and had admitted as much by tendering its PIP policy with a $250,000 allowable expenses limit to plaintiff, Federated Reserve was not liable to plaintiff. According to Federated Reserve, MCL 500.3114(5) did not permit plaintiff to pursue PIP benefits from each insurer in the order of priority as the PIP policies became exhausted. In response, plaintiff argued that MCL 500.3114(5) required that coverage continued down in the order of priority until all available policies were exhausted or no additional treatment was needed.

After oral argument, the court ruled that MCL 500.3114(5) did not permit plaintiff to exhaust coverage at the highest priority and then "stack insurers or continue down the list to recover under as many policies as she can identify." Consequently, the court granted Federated Reserve's motion under MCR 2.116(C)(10) because there were no circumstances under which it could be held liable for plaintiff's claim because a higher-priority insurer was identifiable, i.e., USA Underwriters.

Federated Reserve then moved for summary disposition of plaintiff's UM/UIM claims under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted) and (C)(10). According to Federated Reserve, plaintiff was not entitled to UM/UIM benefits under the terms of

the Federated Reserve policy because she was not operating a covered auto at the time of the accident. Additionally, because plaintiff was occupying a motorcycle that she owned, she fell within an exclusion in the policy, barring plaintiff from claiming benefits under the Federated Reserve policy. Plaintiff opposed the motion, arguing that because plaintiff's husband was a named insured in the policy, plaintiff was entitled to UM/UIM benefits regardless of the vehicle that she operated at the time of the accident.

Following oral arguments, the court held it was undisputed that plaintiff was the spouse of a named insured; thus, she qualified as an insured if she was occupying a covered auto at the time of the accident. The endorsement to Federated Reserve's policy twice stated that motorcycles were excluded from the definition of an auto, which replaces the definition of auto in the policy. Consequently, because plaintiff was not operating a covered auto at the time of the accident, she was not entitled to UM/UIM benefits under the policy. Because the court found that plaintiff did not qualify as an insured, the court found the exclusionary provision inapplicable because "it expressly relates to the use of an auto." Plaintiff now challenges these orders on appeal.

## II. STANDARDS OF REVIEW

We review a trial court's decision to grant or deny a motion for summary disposition de novo "to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. at 120. Summary disposition is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).[1]

When reviewing a motion brought under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties in the light most favorable to the nonmoving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the moving party meets its initial burden, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. When the nonmoving party has the burden of proof at trial, it must submit evidence that demonstrates a genuine issue of material fact exists and may not rest on mere allegations or denials in the pleadings. *Id*. at 362-363. "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. at 363. In other words, "[i]f no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020).

---

[1] In its second motion, Federated Reserve moved for summary disposition under MCR 2.116(C)(8) and (C)(10). However, the trial court decided the issue under MCR 2.116(C)(10) because the parties presented the court with documentary evidence in support of their positions. Consequently, we review the trial court's decision under MCR 2.116(C)(10) only. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017).

The question of the availability of insurance under a statute is a question of statutory interpretation. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015). We review the proper interpretation and application of relevant statutes de novo. *Id*. Additionally, we review a trial court's interpretation of contractual language and the legal effect of a contractual clause de novo. *In re Koch Estate*, 322 Mich App 383, 398; 912 NW2d 205 (2017).

## III. PIP CLAIM

Plaintiff argues that the trial court erred by granting Federated Reserve's motion for summary disposition of her PIP claim against Federated Reserve because the no-fault act, MCL 500.3101 *et seq*., permits plaintiff to claim PIP medical benefits from a lower-priority insurer after a higher-priority insurer's PIP medical-benefits coverage is exhausted. We agree.

Under the no-fault act, PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). Generally, a person injured in a motor vehicle accident must seek PIP benefits from their own insurer under MCL 500.3114(1). However, there is an exception to this rule when the accident involves a motorcycle. MCL 500.3114(5). In such a case, MCL 500.3114(5) establishes the order of priority that the operator or passenger of a motorcycle must follow to claim no-fault benefits for injuries sustained in an accident with a motor vehicle:

> Subject to subsections (6)[2] and (7),[3] a person who suffers accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall

---

[2] MCL 500.3114(6) states:

> If an applicable insurance policy in an order of priority under subsection (5) is a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits under section 3107d, or as to which an exclusion under section 3109(2) applies, the injured person shall claim benefits only under other policies, subject to subsection (7), in the same order of priority for which no such election has been made. If there are no other policies for which no such election has been made, the injured person shall claim benefits under the next order of priority or, if there is not a next order of priority, under the assigned claims plan under sections 3171 to 3175.

[3] MCL 500.3114(7) states:

> If personal protection insurance benefits are payable under subsection (5) under 2 or more insurance policies in the same order of priority, the benefits are only payable up to an aggregate coverage limit that equals the highest available coverage limit under any 1 of the policies.

-4-

claim personal protection insurance benefits from insurers in the following order of priority:

> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

> (b) The insurer of the operator of the motor vehicle involved in the accident.

> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.

> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident. [MCL 500.5114(5).]

Before the no-fault act was amended in 2019, all persons injured in motor vehicle accidents were permitted to receive unlimited lifetime benefits for allowable expenses under MCL 500.3107(1). See, e.g., *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012). However, after the act was amended in 2019, insurers were permitted to "offer less than unlimited PIP coverage, provided certain statutory requirements are satisfied." *Bronson Health Care Group, Inc v Esurance Prop & Cas Ins Co*, 348 Mich App 428, 440; 19 NW3d 151 (2023). Depending on whether the policyholder has other applicable insurance policies, they can now choose from six different PIP medical-benefits coverage levels: (1) no coverage;[4] (2) $50,000;[5] (3) $250,000 with PIP medical exclusions;[6] (4) $250,000;[7] (5) $500,000;[8] and (6) unlimited coverage.[9]

Because the allowable PIP medical benefits were unlimited before the 2019 amendments, no-fault litigation in motorcycle accident cases generally "centered on identifying the highest-priority insurers for payment." *Mary Free Bed Rehab Hosp v Esurance Prop & Cas Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 370846); slip op at 10. Now, however, "policyholders can choose no or limited coverage, [so] identifying the highest-priority insurer will not necessarily result in the injured motorcyclist or treating medical provider obtaining enough benefits to cover incurred medical expenses." *Id*. at ___; slip op at 10-11. Accordingly, courts in cases like the one at bar were then faced with the novel issue of whether a motorcyclist could recover from a lower-priority insurer under MCL 500.3114(5) after the PIP benefits of higher-priority insurers were exhausted. *Id*. at ___; slip op at 11.

This Court recently addressed the issue and answered the question in the affirmative:

---

[4] MCL 500.3107d.

[5] MCL 500.3107c(1)(a).

[6] MCL 500.3107c(1)(b); MCL 500.3109a(2).

[7] MCL 500.3107c(1)(b).

[8] MCL 500.3107c(1)(c).

[9] MCL 500.3107c(1)(d).

[B]ecause the 2019 amendments allow policyholders to decline or limit PIP coverage, there may be circumstances in which the benefits sought exceed the first-in-priority insurer's policy limits. Under such circumstances, and when a lower-priority insurer has a higher limit (or, as is the case here, no limit at all), we hold that the plain language of MCL 500.3114(5) allows an injured motorcyclist or their treating medical provider to recover from such lower-priority insurers once coverage by a higher-priority insurer is exhausted. This is because nothing in the language of Section 3114(5), which sets out a sequential list of insurers, prohibits continuing down the priority ladder to obtain benefits if a higher-priority insurer's policy is inadequate. [*Id*. at ___; slip op at 11-12.]

Indeed, this Court held that "[t]o deny an injured motorcyclist access to their own unlimited-coverage policy, should a higher-in-priority policy associated with the accident vehicle be capped, runs counter to the spirit of the no-fault act and its 2019 amendments which prioritize personal choice in insurance policies." *Id*. at ___; slip op at 12.

In the present case, the trial court dismissed plaintiff's PIP claim against Federated Reserve because she was permitted to seek PIP medical benefits from USA Underwriters, and only USA Underwriters, as the higher-priority insurer. In *Mary Free Bed*, this Court held that MCL 500.3114(5) allows a motorcyclist to recover PIP medical benefits from a lower-priority insurance policy after the PIP medical-benefits coverage was exhausted under a higher-priority insurance policy. Accordingly, the trial court's decision granting summary disposition to Federated Reserve on this basis requires reversal.[10]

## IV. UM/UIM CLAIMS

Next, plaintiff argues that the trial court erred in determining that she was not entitled to UM/UIM coverage under the plain language of the Federated Reserve policy. Because the trial court reached the correct conclusion, we affirm.

---

[10] Federated Reserve argues that even if the trial court erred in its interpretation of MCL 500.3114(5), we should affirm the trial court's decision on the alternate ground that the Federated Reserve policy's Michigan PIP endorsement contains a specific exclusion that would apply to bar plaintiff from recovering additional PIP benefits under the policy. Federated Reserve did not make this argument in the trial court, however. "Although an appellee need not file a cross-appeal to argue alternative reasons to support a judgment, . . . to properly preserve a claim for appeal, the reasons must have been presented to the lower court." *Riverview v Sibley Limestone*, 270 Mich App 627, 633 n 4; 716 NW2d 615 (2006) (citations omitted). As an error-correcting court, our review is generally limited to matters that were actually presented to the trial court. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018). Accordingly, we will not consider Federated Reserve's argument about this exclusion for the first time on appeal. We express no opinion on whether Federated Reserve will be permitted to raise that defense during proceedings on remand.

-6-

A.  PRINCIPLES OF CONTRACT INTERPRETATION

When insurance coverage is mandated by statute, then the "the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits." *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310 (1993).  See also *Meemic Ins Co v Fortson*, 506 Mich 287, 297-298; 954 NW2d 115 (2020) ("[O]ne thing that is not open to debate is that the [no-fault] act governs the coverages it mandates . . . .").  However, when insurance coverage is not mandated by statute, the policy is interpreted using the ordinary principles of contract interpretation. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 533; 676 NW2d 616 (2004).  "Uninsured motorist benefit clauses are construed without reference to the no-fault act because such insurance is not required under the act." *Id*.

Because insurance policies are contractual agreements, "[t]he rules of contract interpretation apply to the interpretation of insurance contracts." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010).  Accordingly, insurance contracts must be "read as a whole and must be construed to give effect to every word, clause, and phrase." *Id*.  When the language of the contract is clear, courts must enforce the contract as written. *Id*.  Our goal when interpreting a contract is to honor the intent of the contracting parties. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 446; 886 NW2d 445 (2015).  The best evidence of the parties' intent is the language used in the contract. *Id*.

"While exclusionary clauses in insurance contracts are strictly construed in favor of the insured, clear and specific exclusions must be enforced as written." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 468; 761 NW2d 846 (2008).  Exclusions must be enforced to ensure that the insurance company is not held liable for a risk it did not assume. *Home-Owners Ins Co v Smith*, 314 Mich App 68, 73; 885 NW2d 324 (2016).  Accordingly, "[a] court must first determine if an insurance policy provides coverage, and then it must determine if coverage is excluded." *Id*.

B.  FEDERATED RESERVE'S POLICY

Our first task is to determine whether plaintiff is covered by Federated Reserve's UM/UIM policy endorsement.  The policy endorsement provides, in pertinent part:

**A.  Coverage**

**1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle".  The damages must result from "bodily injury" sustained by the "insured" caused by an "accident".  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

The definitions in the endorsement provide that an "uninsured motor vehicle" includes an "underinsured motor vehicle."

The parties' disagreement about whether coverage under this section applies to plaintiff hinges on whether she fits within the definition of an insured, which is defined in the endorsement as follows:

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

      **a.** The Named Insured and any "family members".

      **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

      **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

      **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

      **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

The declarations page lists "Bruner Plumbing & Heating Co" as the named insured, and James Bruner is not separately listed in the declarations as a named insured.

If we were interpreting this provision without reference to the positions taken by the parties in the trial court, it would seem clear that because Bruner Plumbing & Heating Co, a corporation, was listed as the named insured in the policy declarations, the second set of definitions would control who qualifies as an insured under the UM/UIM endorsement. However, in its motion for summary disposition, Federated Reserve took the position that "[p]laintiff's husband, James Bruner, was a named insured on the Federated Reserve policy." Later in the motion, however, Federated Reserve somewhat confusingly argued that because the corporation was the named insured, the second set of definitions controlled. In its reply, Federated Reserve seemed to take a slightly different position: "Defendant does not dispute that James W. Bruner is an additional 'Named Individual' under the terms of the Federated Reserve Policy. However, he is not a 'Named Insured' anywhere in the Federated Reserve Policy . . . ." The trial court ultimately concluded that it was "undisputed that Plaintiff is the spouse of a named insured under the subject [Federated Reserve] policy . . . ."

Plaintiff contends that Federated Reserve is barred from arguing that James Bruner was not a named insured because it stipulated to that fact in the trial court, thereby waiving any argument to the contrary. It is true that a "party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003) (quotation marks and citation omitted). More fundamentally, "a party may not create error in a

lower court, and then claim on appeal that the error requires reversal." *Clohset v No Name Corp*, 302 Mich App 550, 566; 840 NW2d 375 (2013). However, it is also true a waiver requires "an intentional and voluntary relinquishment of a known right." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 379; 666 NW2d 251 (2003).

In this case, although Federated Reserve's motion for summary disposition was somewhat contradictory on this point, it does not appear that Federated Reserve knowingly and intentionally waived the argument that Bruner's corporation was the named insured. Rather, Federated Reserve argued in its motion that because Bruner Plumbing & Heating Co was the named insured in the Federated Reserve policy, the second set of definitions applied, i.e., the definitions applicable when the named insured is a corporation. Further, as noted earlier, our goal when interpreting a contract is to honor the intent of the contracting parties. *Kyocera*, 313 Mich App at 446. If we were to hold that Federated Reserve's inartful summary disposition motion required the Court to interpret the contract in a way that the parties clearly did not intend when they executed the agreement, our goal of honoring the intent of the parties would be subverted. Accordingly, we do not believe that because Federated Reserve stated in its motion for summary disposition that James Bruner was a named insured, this statement is binding on our interpretation of the contract. Federated Reserve's motion was, at worst, confusing on this point, and so Federated Reserve does not appear to have voluntarily and intentionally waived its right to argue the contrary.

Turning now to a de novo review of the contractual provisions at issue, the Federated Reserve policy's declarations list "Bruner Plumbing & Heating Co," a corporation, as the named insured. Accordingly, because the named insured is a corporation, an "insured" for the purposes of the UM/UIM endorsement is:

> **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

> **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

The policy further defines "autos" as "**Owned 'autos' only.** Only those 'autos' you own . . . . This includes those 'autos' whose ownership you acquire after the policy begins." The policy defines "you" as "the Named Insured shown in the Declarations." Consequently, to qualify as a covered auto, the motorcycle plaintiff was driving would need to be owned by the named insured in the declaration page, i.e., Bruner Plumbing & Heating Co. However, the police report indicates that plaintiff owned the motorcycle she was driving at the time of the accident. Because the named insured did not own the motorcycle involved in the accident, the motorcycle was not a "covered auto," and plaintiff would not be eligible for UM/UIM coverage under the Federated Reserve policy endorsement.

This is not, however, the end of the inquiry because the Federated Reserve policy also includes a broadened coverage endorsement which provides additional coverage for named

individuals.[11]  In that endorsement, James Bruner is listed as a named individual.  The endorsement modifies the UM/UIM endorsement as follows:

**C.  Changes in Auto Medical Payments and Uninsured and Underinsured Motorist Coverages**

The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member".

Consequently, if plaintiff were able to demonstrate that she fits within this additional definition of an insured, she would be eligible for UM/UIM coverage despite being unable to meet the definition of an insured in the UM/UIM endorsement itself.  However, for the reasons articulated by Federated Reserve, she cannot do so.

The expanded definition of an insured in the broadened coverage endorsement provides, in essence, that plaintiff, as a family member of the named individual (Bruner), would be an insured while occupying an auto that is not owned by the named insured (the corporation) except any auto owned by Bruner or his family members.  In this case, irrespective of whether a motorcycle qualifies as an auto, because the motorcycle is owned by plaintiff, she would not meet this expanded definition of an insured.  Consequently, because plaintiff cannot meet either the definition of an insured in the UM/UIM endorsement itself, nor can she meet the added definition of insured in the broadened coverage endorsement, she has not demonstrated that she would be eligible for coverage under the policy.[12]  This is fatal to her claim.  Consequently, we believe the

---

[11] Federated Reserve argues that the broadened coverage endorsement is "an additional exception" akin to an exclusion.  The trial court also described the expanded definition as an exclusion.  However, this misconstrues the effect of the broadened coverage endorsement, which makes clear that the provision *adds* to the definition of an insured in the UM/UIM endorsement—it does not exclude a person who otherwise meets the definition of an insured in the UM/UIM endorsement.

[12] Because we hold that plaintiff was not eligible for coverage under the Federated Reserve policy's UM/UIM endorsement, including the broadened coverage endorsement, we need not reach the issue of whether coverage is excluded by the additional exclusion cited by Federated Reserve because the issue is moot.  An issue is rendered moot if it "presents nothing more than an abstract question of law, the determination of which would not result in the granting of any further relief." *Detroit Media Group, LLC v Detroit Bd of Zoning Appeals*, 339 Mich App 38, 63-64; 981 NW2d 88 (2021).  "[A]s a general rule, this Court will not entertain moot issues or decide moot cases." *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted, alteration in original).

trial court reached the correct result, and we affirm, albeit for different reasons.[13]

We affirm the trial court's summary disposition of plaintiff's claims for UM/UIM benefits against Federated Reserve, and we reverse the trial court's summary disposition of plaintiff's PIP claim against Federated Reserve and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mariam S. Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

---

[13] The trial court held, in essence, that the motorcycle was not a covered auto under the definition provided in the policy because motorcycles were excluded from the definition of an auto. We hold that the motorcycle was not owned by the named insured, and therefore not a covered auto, so we need not reach the question of whether a motorcycle could qualify as an auto. We note, however, that even though two Michigan-specific policy endorsements modified the Business Auto Coverage Form to exclude motorcycles from the definition of an auto for the purposes of PIP coverage and Michigan property protection coverage, the UM/UIM endorsement did not contain a similar limitation.